BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
KEVIN J. BUTLER (Cal. Bar No. 329129)
JENA A. MACCABE (Cal. Bar No. 316637)
Assistant United States Attorneys
Major Crimes Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6495/5046
     Facsimile: (213) 894-0141
     E-mail:    kevin.butler2@usdoj.gov
                jena.maccabe@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 25-00211-FLA-1 |
|---|---|
| Plaintiff, | BRIEF IN SUPPORT OF DETENTION FOR DEFENDANT EUGENE HENLEY, JR. |
| v. | |
| EUGENE HENLEY, JR.,<br>  aka "Big U,"<br>  aka "Unc,"<br>  aka "Draws,"<br>  aka "Hannibal,"<br>  aka "Hannibal Muhammad,"<br>  aka "Anybody Killa,"<br>  aka "Dave Austin," | Hearing Date: November 17, 2025<br>Hearing Time: 1:30 p.m. |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Kevin J. Butler and Jena A. MacCabe, hereby files its brief in support of detention for defendant Eugene Henley, Jr., also known as ("aka") "Big U," aka

"Unc," aka "Draws," aka "Hannibal," aka "Hannibal Muhammad," aka "Anybody Killa," aka "Dave Austin."

This brief is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 16, 2025              Respectfully submitted,

                                                BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

       /s/
KEVIN J. BUTLER
JENA A. MACCABE
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

ii

**TABLE OF CONTENTS**

DESCRIPTION                                                                PAGE

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.   INTRODUCTION...................................................1

II.  STATEMENT OF FACTS.............................................2

     A.   While In Custody, Defendant Has Demonstrated His
          Unwillingness or Inability to Comply with Conditions......2

III. LEGAL STANDARD.................................................4

IV.  DEFENDANT SHOULD REMAIN DETAINED BECAUSE HE IS A RISK OF
     NON-APPEARANCE AND A DANGER TO THE COMMUNITY...................5

     A.   Precedent and the Bail Reform Act Demand Continued
          Detention.................................................5

     B.   The Bail Reform Act Factors Still Warrant Detention.......9

          1.   Bail Reform Act Factors............................10

V.   CONCLUSION....................................................12

**TABLE OF AUTHORITIES**

Cases

United States v. Aziz,
  Case No. CR 21-118 JLR, 2021 WL 5494865 (W.D. Wash. Nov. 23, 2021) 7
United States v. Barone,
  387 F. App'x 88 (2d Cir. 2010) .................................... 11
United States v. Boatwright,
  612 F. Supp. 3d 1169 (D. Nev. 2020) ............................... 4
United States v. Butler,
  Case No. 21-20027-JAR-01, 2022 WL 1538696 (D. Kan. May 16, 2022) .. 7
United States v. Clemons,
  Case No. 1:23-cr-00662-16, 2025 WL 2599481 (N.D. Ohio Sept. 9,
  2025) ............................................................. 6
United States v. Colombo,
  777 F.2d 96 (2d Cir. 1985) ....................................... 10
United States v. Esquibel,
  No. 1:15-CR-02731-JCH, 2023 WL 6481140 (D.N.M. Oct. 5, 2023) .. 5, 7,
  10
United States v. Hernandez-Miranda,
  601 F.2d 1104 (9th Cir. 1979) .................................... 11
United States v. Jackson, Case No. 15-40065-01-D,
  DC, 2020 WL 7626539 (D. Kan. Dec. 22, 2020) ................... 8, 11
United States v. Lomax,
  493 F. App'x 437 (4th Cir. 2012) ................................. 11
United States v. Motamedi,
  767 F.2d 1403 (9th Cir. 1985) ..................................... 4
United States v. Murrington,
  No. CR 13-70444-MAG KAW, 2013 WL 2443260 (N.D. Cal. June 4, 2013) 11
United States v. Orena,
  986 F.2d 628 (2d Cir. 1993) ...................................... 11
United States v. Richardson,
  No. 2:11-CR-220, 2011 WL 5026456 (S.D. Ohio Oct. 21, 2011) ....... 11
United States v. Rowelette, Case No. CR17-0070-JCC-1,
  2022 WL 2531815 (W.D. Wash. July 7, 2022) ......................... 7
United States v. Ryan,
  445 F. Supp. 3d 707 (C.D. Cal. 2020) .............................. 4
United States v. Schley,
  Case No. CR19-0247-JCC, 2023 WL 2890384 (W.D. Wash. Apr. 11, 2023) 7
United States v. Terrone,
  454 F. Supp. 3d 1009 (D. Nev. 2020) ............................... 4
United States v. Tortora,
  922 F.2d 880 (1st Cir. 1990) ..................................... 10
United States v. Wilburn,
  No. 2:18-CR-115, 2020 WL 1899146 (W.D. Pa. Apr. 17, 2020) ......... 9
United States v. Williams,
  No. 2:20-CR-81, 2020 WL 4431565 (W.D. Pa. July 31, 2020) ....... 8, 9

United States v. Wood,
   Case No. 21-385-23, 2022 WL 1689511 (W.D. Penn. May 26, 2022) . 7, 10

Statutes

18 U.S.C. § 3142(e)(1).............................................. 4
18 U.S.C. § 3142(i)................................................. 4

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

For a parent to have to bury a child is a tragedy that none should suffer.  For a parent to miss that burial is yet another tragedy.  Unfortunately, such is this case here.  *First*, regardless of the circumstances, the factors set forth in the Bail Reform Act still apply.  And here, defendant Eugene Henley, Jr., also known as "Big U," ("defendant") is charged with the murder of a young man who himself was buried by his parents -- a funeral that defendant famously did not attend, despite knowing the victim his whole life, managing his music career, and paying for the trip that would be his last moments on earth.  Amidst the other vast and sweeping allegations in this case, the Bail Reform Act continues to demand detention based on danger and risk of non-appearance.  *Second*, defendant cites to a single district court case in which a court granted release under 3142(i) in order to attend a funeral.  This single instance, however, is belied by an astounding number of cases in which courts have routinely, if not uniformly, denied requests to attend funerals.

Ultimately, defendant's release -- for any amount of time -- creates far too great a risk to justice in this case and to human life.  Defendant should remain detained for the safety of the community and the victims and witnesses to his crimes.  In defendant's own words, "If I would've had a problem with any man . . . , the issue would've been resolved, and he wouldn't be here, or I wouldn't be here" and "Can't no [one] beef with me . . . Cause if he do, I'mma kill him. Period. Point Blank. I. Am. Going. To. Murder. Him."  Defendant now knows who has reported his crimes and

1

may seek to make good on those threats. Those are risks this Court cannot allow.

## II. STATEMENT OF FACTS

Defendant's crimes are fulsomely contained in the Criminal Complaint (Dkt. 1) and lengthy indictment (Dkt. 81). The government has also detailed the reasons for his continued detention in connection with defendant's original bail determination (Dkt. 114). Thus, the government will not repeat those here but respectfully request they be incorporated by reference.

### A. While In Custody, Defendant Has Demonstrated His Unwillingness or Inability to Comply with Conditions

In order to fully assess defendant's temporary leave request, the government obtained and reviewed defendant's phone communications in federal custody. Those communications revealed a complete, if not wanton, disregard for the BOP rules, willful attempts to evade discovery of those violations, and continued attempts to obfuscate and hide his communications. For example, defendant has utilized other inmates' BOP numbers and accounts to complete <u>hundreds</u> of calls in violation of BOP rules. In each of those calls, the inmate whose account defendant is using speaks first to verify their voice before handing the phone over to defendant. In at least half of those hundreds of calls, defendant then has the person he is calling add a third person via encrypted applications. Defendant instructs those callers only to ever use encrypted applications for such three-way calls and to utilize only those same applications when discussing any of his business. Defendant also instructs the callers not to greet him with traditional Islamic phrases because it may alert BOP that he is using other inmate's accounts. In each of those calls, the

2

operating system states that the sharing of inmate numbers is a violation of BOP policies <u>and</u> that three-way calling is against BOP policy and that both will subject inmates to disciplinary proceedings.

The content of those calls itself are also in violation of BOP policy as the majority of the calls using other inmate numbers are to an individual identified that defendant refers to as his girlfriend.[1] In those calls, defendant discusses how to thwart BOP mail policies so that defendant can receive illicit photos of her while incarcerated, as well as hiding those photos in legal folders, while simultaneously engaging in phone sex. Defendant and his girlfriend have also devised a scheme in which his girlfriend will sign up for a single paralegal class so that she can visit him in custody, subverting MDC rules that only allow for immediate family or legal visitations.

Defendant also has discussed sending messages to his co-defendants (who are on pretrial supervision with orders not to contact co-defendants), a desire to enforce a rule that no one in the case be allowed to plead guilty unless defendant does, getting in touch with a confidential informant (or, "snitch," according to defendant) in this case, hiring and paying hundreds of thousands of dollars for a team of lawyers, investigators, and paralegals (despite defendant's current retainment of two CJA funded attorneys), and otherwise coded communications.

---

[1] Defendant uses his own account almost exclusively to call his wife, while he uses other inmates' to call his girlfriend or others.

3

**III. LEGAL STANDARD**

Under the Bail Reform Act, "[t]he judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i); see also United States v. Ryan, 445 F. Supp. 3d 707, 708 (C.D. Cal. 2020) (noting that the Bail Reform Act allows for temporary release for 'compelling reasons' only."); United States v. Boatwright, 612 F. Supp. 3d 1169, 1179 (D. Nev. 2020) ("The Bail Reform Act allows for temporary release only if the Court determines such release is 'necessary' for a compelling reason."); United States v. Terrone, 454 F. Supp. 3d 1009, 1018 (D. Nev. 2020) ("A defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i).").

"[T]he relief authorized by Section 3142(i) is to be used 'sparingly.'" United States v. Toledo Pardo, No. 2:22-CR-00151-LK, 2023 WL 4641055, at *1 (W.D. Wash. July 20, 2023) (denying prisoner's motion for a five-hour temporary release "based on his desire to attend his cousin's funeral to honor him and grieve with his family"). Such determinations must be made in the context of the Bail Reform as a whole, which demands that a defendant must be detained pending trial where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is thus appropriate for a defendant who is either a danger to the community or a risk of non-appearance. United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985).

**IV. DEFENDANT SHOULD REMAIN DETAINED BECAUSE HE IS A RISK OF NON-APPEARANCE AND A DANGER TO THE COMMUNITY**

The 43 federal charges against defendant, the damning evidence against him, his dangerous history and characteristics, and the risk to numerous specific individuals and the community at large if he were to be released all support his detention pending trial and caution against even temporary release. The tragic circumstances that have arisen since his incarceration do not necessarily compel his release.

**A. Precedent and the Bail Reform Act Demand Continued Detention**

Nearly every court that has analyzed a similar request has come to the same conclusion: temporary release for a family member's funeral is not a necessary and compelling reason. See, e.g., United States v. Esquibel, No. 1:15-CR-02731-JCH, 2023 WL 6481140, at *1 (D.N.M. Oct. 5, 2023) ("The Court has not found a case in this District or Circuit that suggests that the desire to attend a loved one's funeral is a "compelling" reason for temporary release within the meaning of the statute. Further, many detained defendants lose loved ones while in custody. Temporary release to attend funerals would drastically increase the use of § 3142(i) and is not a 'compelling' reason that justifies temporary release under that statute.").

A myriad of cases that analyze § 3142(i) come to the same conclusion, based on the same analysis. See United States v. Navarro, No. 219CR00056JCMDJA, 2020 WL 5877816, at *1 (D. Nev. Oct. 2, 2020) ("Navarro simply argues that this Court should order his temporary release because his father's death and his attendance at

5

the subsequent funeral is such a unique and compelling circumstance that § 3142(i) warrants release. The Court is unpersuaded by this argument . . . The death of Navarro's father and his subsequent funeral, while tragic and disheartening, do not rise to the level of another compelling reason to release Navarro temporarily to attend the funeral given the record in this case and the previous detention order."). Unfortunately, "[i]t is not uncommon for those in custody to face the loss of a loved one while detained. Granting temporary release for these circumstances is simply not supported by the Bail Reform Act." United States v. Pineda, No. 1:19-CR-00195-NODJ-BAM-1, 2025 WL 268954, at *1 (E.D. Cal. Jan. 21, 2025). This Court should find the same.

These sentiments are shared in universally every court that has addressed such requests, each time noting that it is not uncommon for important family events to transpire while a defendant is detained awaiting trial, including funerals of close family members and other loved ones. Those courts, and the government here, sympathize with defendants for their loss and appreciates the desire to attend funeral services and to spend time with family. But those same courts consistently conclude that a loved one's funeral does not constitute a compelling reason for temporary release even when travel is not required and the funeral is for a close family member. See, e.g., United States v. Clemons, Case No. 1:23-cr-00662-16, 2025 WL 2599481, at *1-2 (N.D. Ohio Sept. 9, 2025); United States v. Spargo, Case No. 3:25-cr-05043-DGE, 2025 WL 1582128, at *1 (W.D. Wash. June 4, 2025); United States v. Williams, Case No. 6:24-cr-199-WWB-RMN, 2025 WL 562646, at *1 (M.D. Fla. Feb. 20, 2025); Pineda, 2025 WL 268954, at *1-2; United States v. Lopez, Case No. 1:22-cr-00159-JLT-

SKO-1, 2024 WL 3304188, at *2 (E.D. Cal. July 3, 2024); United States v. Sibley, Case No. 23-cr-00486-DDD, 2024 WL 2923912, at *3 (D. Colo. June 10, 2024) (denying motion for temporary release so detainee can attend his grandmother's funeral because detainee did not establish "another compelling reason"); United States v. Burket, Case No. 1:23-cr-00420-DDD, 2024 WL 152513, at *3 (D. Colo. Jan. 15, 2024); Esquibel, 2023 WL 6481140, at *1-2 (D.N.M. Oct. 5, 2023); Toledo Pardo, 2023 WL 4641055, at *1-2 (W.D. Wash. July 20, 2023) (denying detainee's motion for a five-hour temporary release "based on his desire to attend his cousin's funeral to honor him and grieve with his family"); United States v. Castaneda, Case No. 1:21-cr-00304-ADA-BAM, 2023 WL 3619476, at *1 (E.D. Cal. May 24, 2023); United States v. Schley, Case No. CR19-0247-JCC, 2023 WL 2890384, at *1 (W.D. Wash. Apr. 11, 2023); United States v. Rowelette, Case No. CR17-0070-JCC-1, 2022 WL 2531815, at *1 (W.D. Wash. July 7, 2022); United States v. Wood, Case No. 21-385-23, 2022 WL 1689511, at *1-2 (W.D. Penn. May 26, 2022) (finding that attending an aunt's funeral was not a compelling reason under Section 3142(i) where the defendant was charged with a drug trafficking offense carrying a term of not less than ten years and up to life imprisonment; had a history of prior drug-related and firearms offenses, had committed multiple new offenses while on bail or probation, and had a history of failures to appear for court); United States v. Butler, Case No. 21-20027-JAR-01, 2022 WL 1538696, at *2-3 (D. Kan. May 16, 2022); United States v. Merayo, Case No. 1:21-cr-00740-MV, 2021 WL 6134683, at *1 (D.N.M. Dec. 29, 2021) (finding that attending a grandmother's funeral was not a compelling reason for temporary release under Section 3142(i)); United States v. Aziz, Case No. CR 21-118 JLR, 2021 WL 5494865, at *2

(W.D. Wash. Nov. 23, 2021), aff'd 2021 WL 5514432, at *1-2 (W.D. Wash. Nov. 24, 2021); United States v. Jackson, Case No. 15-40065-01-DDC, 2020 WL 7626539, at *1 (D. Kan. Dec. 22, 2020) ("The court fully understands Mr. Jackson's desire to grieve his grandfather alongside other family members. And in ordinary circumstances, attending a beloved family member's funeral would qualify as a compelling event. But the court must deny the motion because Mr. Jackson's own conduct renders him untrustworthy for temporary release."); United States v. Banks, Case No. 2:20-cr-00097-APG-DJA, 2020 WL 6505040, at *2-3 (D. Nev. Nov. 5, 2020); Navarro, 2020 WL 5877816, at *2 (rejecting defendant's argument that the death of his father and "attendance at the subsequent funeral is such a unique and compelling circumstance that § 3142(i) warrants release," in light of the defendant's record of multiple felony convictions, arrests for violations of the terms of release, and his current charges of committing, while on probation, crimes that included distributing and possessing with intent to distribute controlled substances); United States v. Williams, No. 2:20-CR-81, 2020 WL 4431565, at *2-3 (W.D. Pa. July 31, 2020); United States v. Carter, Case No. 0:20-cr-0035-MJD-KMM, 2020 WL 2112280, at *1-2 (D. Minn. May 4, 2020); United States v. Spinks, Case No. 1:18-cr-00084-JAW-1, 2019 WL 2238359, at *2-3 (D. Me. May 23, 2019).  On the other side of the ledger, defendant's motion cites to only one judicial opinion granting a motion for temporary release to attend a funeral.[2]  And defendant identifies none in which an

---

[2] In reviewing all available decisions analyzing this topic, the government was only able to locate one other opinion releasing a defendant for a funeral.  There, defendant was charged with relatively minor crimes and the government stipulated to temporary release.  United States v. Campbell, No. 2:21-CR-92-DJC, 2023 WL
*(footnote cont'd on next page)*

8

inmate successfully petitioned for temporary release when standing accused of murder and facing life imprisonment.[3]

### B. The Bail Reform Act Factors Still Warrant Detention

Even when seeking release under § 3142(i), and even were this Court to disagree with nearly every district court that a funeral is a necessary and compelling reason for release, the Court must still consider the factors that originally warranted defendant's detention. "[A]n examination of the defendant's dangerousness and risk of flight is appropriate when deciding a temporary release motion." United States v. Williams, No. 2:20-CR-81, 2020 WL 4431565, at *2 (W.D. Pa. July 31, 2020) ("When the court interprets 'compelling reason', it should do so against the backdrop of the Bail Reform Act as a whole.") (citing United States v. Wilburn, No. 2:18-CR-115, 2020 WL 1899146, at *11 (W.D. Pa. Apr. 17, 2020) ("[I]f there is anything that permeates the Bail Reform Act, it is Congress' intent that courts consider the defendant's dangerousness and risk of flight when making detention determinations . . . . It would strike the Court as odd, then, that § 3142(i)'s 'compelling reason' prong would ignore a defendant's danger or flight risk.")); Lopez, 2024 WL 3304188, at *2 ("The Court recognizes the challenging circumstances presented by the death . . . and his understandable desire to be with his family at the funeral. However, the Court must consider the factors that warranted his detention.").

---

8890655, at *1 (E.D. Cal. Dec. 26, 2023) (release of defendant for three days who had been charged with mail fraud).

[3] Defendant has also not carried his burden to show that he will be released to the custody of another "appropriate person" under the Bail Reform Act. A nameless, unknown security company paid for by an unknown source does not constitute an appropriate person.

9

Here, defendant's alleged crimes, history, the strength of the evidence, his flight before arrest and subsequent conduct while detained, and the sentencing exposure he faces all continue to warrant detention. Wood, 2022 WL 1689511, at *1 (denying funeral release where defendant was charged with a drug trafficking offense carrying a term of not less than ten years and up to life imprisonment); Esquibel, 2023 WL 6481140, at *1-2 (denying defendant's request for a ten-hour release to attend father's funeral).

### 1. Bail Reform Act Factors

The government need not recite again how each factor unequivocally weighs in favor of detention. There is no crime more serious or permanent than the murder that defendant committed, and still, defendant did not stop there. As stated in the government's previous filing, courts have unanimously ruled in favor of detention when considering bail generally and those factors have not changed. See, e.g., United States v. Tortora, 922 F.2d 880, 885 & n.6 (1st Cir. 1990) (detaining on danger, reversing district court's release order, noting defendant's "total commitment to a life of crime," quoting defendant's threats to kill, and finding his association with organized crime and "devotion to the Mafia" a "highly relevant" consideration to detention); see also United States v. Colombo, 777 F.2d 96, 99 (2d Cir. 1985) (reversing release order even where defendant did not directly participate in any crime alleged but led the criminal enterprise that carried out criminal activities at his direction). Defendants facing RICO charges based on predicate acts of murder, conspiracy to murder, and other crimes were also detained on danger, for "readily further[ing]" organized crime's "criminal

10

objectives through violence," which appropriately describes defendant here.  United States v. Orena, 986 F.2d 628, 632 (2d Cir. 1993); United States v. Barone, 387 F. App'x 88, 90 (2d Cir. 2010) ("The fact that Barone committed and planned violent crimes even when purportedly cooperating with authorities signals a degree of dangerousness unlikely to be deterred by bail release conditions."); United States v. Lomax, 493 F. App'x 437, 439 (4th Cir. 2012) (per curiam) (affirming district court's explanation that defendant's Hobbs Act robbery "crimes were a danger to the community" in affirming sentence); United States v. Hernandez, No. 2:19-CR-00737-ODW, 2020 WL 4287585, at *3 (C.D. Cal. July 24, 2020) (ordering detention where defendant's possession of a loaded firearm and drugs "represented a danger to the community"); United States v. Murrington, No. CR 13-70444-MAG KAW, 2013 WL 2443260, at *2 (N.D. Cal. June 4, 2013) (ordering detention where defendant fought and ran from arresting officers but later admitted that he possessed methamphetamine and ammunition, which "suggest[s] that Defendant poses a danger to the community which weighs in favor of detention"); Cf. United States v. Hernandez-Miranda, 601 F.2d 1104, 1107 (9th Cir. 1979) (flight immediately after commission of a crime or immediately before trial supports inference of consciousness of guilt); United States v. Prieto, No. 3:19-CR-142-RGJ, 2020 WL 3105414, at *4 (W.D. Ky. June 11, 2020) (upholding detention on danger finding based on defendants' "own threats of violence, including threats to potential witnesses or cooperators"); United States v. Richardson, No. 2:11-CR-220, 2011 WL 5026456, at *6 (S.D. Ohio Oct. 21, 2011) ("[E]ven the non-violent forms of obstruction of justice pose a sufficiently

serious danger to the community such that pretrial detention is warranted.").

## V. CONCLUSION

Defendant's request is admittedly narrow and his desire more than understandable. But the law is clear that such circumstances are not what is contemplated by the Bail Reform Act. Moreover, having seen the insurmountable evidence against him and knowing the sentence he faces, defendant now knows that any time out of custody may very well be the last of his life. This creates incredibly dangerous incentives. And, as the government has previously stated, defendant acted against his interest throughout this investigation. With everything to lose, including the immense goodwill he fraudulently procured from the community and Los Angeles, defendant still told anyone who dared to ask that he was a killer. And he proved that he was. Because defendant is both a danger to the community and a risk of non-appearance, this Court should not grant defendant's request.