CHARLES C. BROWN, ESQ. (Bar No. 179365)
(E-Mail: charlesbrown@parzivalgroup.com)
1 South Fair Oaks Avenue, Suite 204
Pasadena, California 91105
Telephone: (626) 594-4874

The Law Office Of Andrea L. Luem
ANDREA L. LUEM, ESQ. (Pro Hac Vice)
andrea@luemlaw.com
NV Bar No. 8844
CO Bar No. 32106
400 S. 4th Street, Suite 500
Las Vegas, NV 89101
Telephone:702-575-0481

Attorneys for Defendant
EUGENE HENLEY, JR.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v.

EUGENE HENLEY, JR., et al.,

Defendants.

Case No. 2:25-CR-00211-FLA

**Defendant Eugene Henley, Jr.'s Ex Parte Application To Continue Trial To October 19, 2027, Vacate All Scheduled Hearings, Set An Early Status Conference, And Exclude Time Under The Speedy Trial Act; Memorandum Of Points And Authorities; Declaration Of Charles C. Brown**

[Proposed] Order lodged concurrently

Trial Date: Feb. 16, 2027
Time: 8:00 a.m.
Proposed Trial Date: Oct. 19, 2027
Time: 8:00 a.m.

Judge: Hon. Fernando L. Aenlle-Rocha
Courtroom: 6B

TO THE HONORABLE FERNANDO L. AENLLE-ROCHA, UNITED STATES DISTRICT JUDGE; UNITED STATES ATTORNEY; AND ASSISTANT UNITED STATES ATTORNEYS KEVIN J. BUTLER AND JENA A. MACCABE:

Defendant Eugene Henley, Jr., by and through his counsel of record, Charles C. Brown and Andrea Luem, hereby applies ex parte for an order:

1. Continuing the jury trial from February 16, 2027, to October 19, 2027, and the final pretrial conference from February 3, 2027 to October 6, 2027.

2. Vacating all other hearings now on this Court's calendar in this matter. This includes the following:

- Oct. 28, 2026 – Motions in limine
- Nov. 2, 2026 – Wiretap Motion (Judge Vera)
- Nov. 4, 2026 – Motions in limine to exclude other crimes, wrongs or acts and Government's motion in limine to exclude certain cross-examination.
- Nov. 18, 2026 – Daubert evidentiary hearing and motion in limine to exclude government experts.
- Dec. 2, 2026 – Motion in limine to exclude law enforcement testimony.
- Dec. 9, 2026 – Voir dire, jury instructions, verdict form, time-qualified venire, questionnaire and selection procedure.

3. This includes continuing the hearing on the Title III suppression motions that is set for November 2, 2026, at 1:30 p.m., before the Honorable Hernan D. Vera, to whom those motions were reassigned. Because that hearing is on Judge Vera's calendar, Mr. Henley is presenting a parallel request to Judge Vera and asks this Court to make its order known to Judge Vera's chambers so the calendars stay aligned.

4. Setting an **early status conference** within thirty days, or as soon as convenient for the Court, at which the parties will report on the state of preparation and propose a new schedule for pretrial motions and hearings, including the reset severance motions, Dkts. 170, 172, 181, and 182, leading to the October 19, 2027 trial; and

5. Making findings under 18 U.S.C. § 3161(h)(7)(A) and (B)(i), (ii), and (iv) that the ends of justice served by this continuance outweigh the best interest of the public and the defendant in a speedy trial, and excluding the time from February 16, 2027, through October 19, 2027, inclusive.

The requested trial date is eight months after the present one. The motion schedule now in place was set on the submission of Mr. Henley's prior counsel. Dkts. 333, 342, 360. Present counsel had no part in it, or in any other scheduling in this case. Mr. Henley asks that a new schedule be set with present counsel at the table, keyed to the new trial date, at an early status conference.

**Notice and the government's position.** On October 16, 2026, counsel conferred by telephone with Assistant United States Attorney Kevin Butler, who asked for the weekend to state the government's position. On October 19, 2026, by email, the government stated that it opposes any continuance, regardless of its length. Brown Decl. ¶¶ 21–22. Counsel has discussed the need for a continuance with Mr. Henley, and he understands defense counsel's request. Brown Decl. ¶ 23.

This application is based on the attached Memorandum of Points and Authorities, the Declaration of Charles C. Brown, the files and records of this case, and any further evidence or argument the Court may permit.

Respectfully submitted,

DATED: October 23, 2026

By: /s/ *Charles C. Brown*
CHARLES C. BROWN
ANDREA LUEM
Counsel for Eugene Henley, Jr.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Current counsel was appointed on September 25, 2026. Dkt. 447. Trial is set for February 16, 2027. Dkt. 329. The trial is complex, the discovery is voluminous, and Mr. Henley is facing a possible sentence of life imprisonment. After a careful review of the landscape of this case, Counsel for Mr. Henley has concluded that they will need more time to prepare.

The Second Superseding Indictment charges seven defendants. It names Mr. Henley in all 50 counts. It pleads 209 overt acts across fifteen years. It alleges racketeering conspiracy, Hobbs Act robbery and extortion, Mann Act offenses, wire fraud, bank fraud, misapplication of federal program funds, tax evasion, and witness tampering. It carries a special sentencing allegation of murder under Nevada law, which the government says exposes Mr. Henley to life imprisonment. Dkt. 377. The government itself described the discovery as 31 productions and "almost a million files if not over 150 gigabytes of data." Tr. 36:24–37:1 (June 10, 2026). It has grown since. The defense now holds 42 separate deliveries from the government: more than 1.1 million pages, nearly 30,000 audio and video files, and roughly 219 gigabytes of data. That count leaves out a separate drive holding eight forensic device extractions. Brown Decl. ¶ 5.

Counsel has not waited. The defense team has met with Mr. Henley every week, sent investigators into the field, started transcribing the recorded calls, and begun moving the discovery into a searchable platform. Brown Decl. ¶¶ 10–15. Although new counsel has made its best efforts to maintain continuity of the defense team, within three weeks of appointment, the defense lost both of its paralegals. Brown Decl. ¶¶ 16–17. And both appointed counsel carry other cases, with trials and hearings already set between now and February. Brown Decl. ¶¶ 18–20.

Mr. Henley asks the Court to continue trial eight months, to October 19, 2027. That date gives counsel roughly thirteen months from appointment to try a case the government spent four years investigating. He also asks the Court to vacate the interim hearings, which were set on prior counsel's submission, and to hold an early status conference, where present counsel and the government can propose a new motion schedule that leads to the new date.

## II.

## STATEMENT OF FACTS

### A. The Charges.

The Second Superseding Indictment was returned on July 29, 2026. Dkt. 377. It charges seven defendants. Mr. Henley is named in Counts 1 through 50. *Id.* The same day, the government filed a Notice of Complex Case. Dkt. 384. Counts 47 through 50 are new. They allege solicitation and attempted witness tampering on and before June 10, 2026, while Mr. Henley was detained. Dkt. 377 at 74–75. Mr. Henley pleaded not guilty on August 21, 2026. Dkt. 424.

The stakes are high. Count 1 alleges a racketeering conspiracy under 18 U.S.C. § 1962(d) with a special sentencing allegation of premeditated murder under Nevada law, which the government will contend raises the maximum from twenty years to life. Dkt. 377 at 45, ¶ 14; 18 U.S.C. § 1963(a). Most of the remaining counts carry twenty years each; Count 43 carries thirty. 18 U.S.C. §§ 1344, 1951(a), 1343. Mr. Henley disputes the allegations and the special sentencing allegation. The point here is narrower: a case with this exposure must be tried by counsel who are ready.

### B. Procedural History.

Mr. Henley has been detained since March 2025. Dkt. 117 (detention order of April 22, 2025). He is detained at the Metropolitan Detention Center in Los Angeles.

Trial has been continued twice. On May 9, 2025, the Court approved a stipulation, as modified, continuing trial to May 5, 2026. Dkts. 122–123. On April 17,

2026, the Court granted a joint application by counsel for Mr. Martin, Mr. Robinson, and Mr. Henley, and continued trial to February 16, 2027. Dkts. 328–329. Mr. Henley personally objected to that continuance. *Id.*

The present motion schedule came out of that continuance. The Court directed counsel to meet, confer, and propose a schedule of hearings. Dkt. 328. Mr. Henley's then-counsel joined in a joint submission on April 29, 2026. Dkt. 333. The Court set the schedule on May 18, 2026, and amended it on June 22, 2026. Dkts. 342, 360. Present counsel took no part in setting those dates, or any other date in this case. Brown Decl. ¶ 3.

Mr. Henley's prior appointed counsel were relieved on September 17, 2026. Dkts. 436–440. The Court vacated the September 23 severance hearings, including those on Dkts. 181 and 182, pending new counsel. Dkt. 441. It separately vacated the hearings on Dkts. 266 and 371. Dkt. 448. Current counsel were appointed on September 25, 2026. Dkt. 447.

Several motions remain open. The Title III suppression motion, Dkt. 194, and related motions were reassigned to Judge Vera. Dkt. 361. That hearing was continued and then reset for November 2, 2026, at 1:30 p.m. Dkts. 451, 452. Dkt. 451 left the trial date unchanged. The separate search-warrant suppression motion, Dkt. 198, was argued on August 19, 2026, and is under submission. Dkt. 422. Motions in limine, a *Daubert* hearing, and filings on voir dire and jury instructions are calendared between now and the pretrial conference. The severance motions have not been reset.

**C. The Discovery.**

At the June 10, 2026 hearing, AUSA Butler described the discovery this way:

> "The Government has made 31 productions in this case, almost a million files if not over 150 gigabytes of data."

Tr. 36:24–37:1. He added that the government "has produced an enormous amount of materials responsive not only to the rules, but their specific requests," and

that his office had at times been "responding to over 50 emails on an hourly basis." Tr. 37:8–10, 37:23–25. The defense does not cite these statements to accuse the government of anything. It cites them because they measure the job.

The record includes Title III intercepts from at least five authorization periods; consensual recordings made by a confidential source over more than a year; in-person recordings; linesheets; surveillance and doorbell-camera video; cell-site and phone-location records; phone extractions; social-media posts and podcast appearances; bank records, Small Business Administration loan files, tax returns, and donor records; mortgage-application records; and the North Las Vegas Police Department homicide file. Brown Decl. ¶ 6. The government's exhibit list alone identifies roughly 200 recorded calls. There are thousands more in discovery. Many of the government's exhibits are excerpts of longer calls, and the defense must hear the whole call to know what the excerpt leaves out. Brown Decl. ¶ 7.

The June 10 hearing also showed how hard this record is to work. Prior counsel explained that redacted names kept database searches from returning the relevant reports, and the Court ordered unredacted versions produced for attorneys' eyes only by June 26. Tr. 82:18–84:16. Current counsel must reconcile the two sets, keep the protected set protected, and build a usable witness index from them. The parties litigated defense access to a cooperating source's phone, and the government itself warned that a download would raise "an entirely other chain of custody issue and authentication." Tr. 61:13–16; *see* Tr. 55:4–15, 60:1–11, 79:6–80:2. The Court directed follow-up with federal counterparts in Nevada about cooperation, benefits, and impeachment information. Tr. 84:23–87:6. And AUSA Butler told the Court that the continuing investigation "changes the calculus for what we would introduce at trial." Tr. 15:19–23. Six weeks later, the government superseded.

The record has only grown since that hearing. The government has made 33 indexed productions with cover letters. Counting every delivery, there have been 42.

Together they hold 1,121,068 pages, 29,612 audio and video files, and 218.94 gigabytes of data. A separate external drive holds eight forensic extractions, including extractions of Mr. Henley's own devices, and is not part of those totals. Brown Decl. ¶ 5. Each of the 29,612 recordings must be played to be reviewed. None of them can be skimmed.

**D. The Loss of Paralegal Support.**

When counsel were appointed, the defense team included two paralegals. Both are leaving. Those two people carried discovery intake, indexing, and coordination with prior counsel and co-defense teams. Counsel moved at once to replace them. A candidate with experience coordinating discovery in capital cases has been identified and is being brought on. A new team member must still be trained on the platforms, the protective order, and the record before the work can pick up speed.

**E. Counsel's Existing Caseloads.**

Both appointed counsel took this case on top of existing caseloads. Between now and February 16, 2027, Mr. Brown has two other matters with trials, hearings, or filing deadlines already set, including:

- *United States v. Horn, No. CR 25-1025-SSS (Derek Horn)* – A two-week interstate theft case before Judge Sykes in Riverside. Trial is scheduled for January 25, 2027, with a pretrial conference on January 8, 2027.
- *United States v. Armstead, et al., No. CR 25-651-JFW (10) (Tejohn Gray)* – A multi-defendant RICO conspiracy and Hobbs Act robbery prosecution. The client is assigned to Trial Group 1, set for trial on March 18, 2027, with a status conference on February 15, 2027. A trial length estimate has not yet been set; the case should be treated as a multi-week trial.

Brown Decl. ¶ 18.

Ms. Luem has other pending matters as well and intends to resolve as many of those pending prior to trial in this case. Brown Decl. ¶ 19. These include:

- *United States v. Tsethlikai* – Authorized federal death penalty case with motions hearings scheduled for November 18, December 16, 2026, and January 13, February 3, 2027 (Learned Counsel, New Mexico).
- *United States V. Mavo-Finol.* Death penalty eligible RICO/VICAR case with hearing set for December 16, 2026 (Learned Counsel, New Mexico).
- Ms. Luem also has a planned trip abroad from March 14 to March 18, 2027.

Those obligations were in place before the appointment here. Counsel cannot set them aside without prejudice to other clients, and the courts in those cases have set their own calendars. Counsel has arranged the work in this case around them, but they reduce the hours available to this case before February. Brown Decl. ¶ 20.

**F. The Work Done and the Work Remaining.**

The defense has done the following since appointment: met with Mr. Henley at MDC Los Angeles on a weekly rotation beginning September 28, 2026; retained and deployed investigators; begun transcribing the recorded calls most relevant to the suppression motions; begun moving the discovery into a searchable review platform; reviewed the financial records underlying the fraud and embezzlement counts; and begun preparing a discovery request letter to the government. Brown Decl. ¶¶ 10–15.

What remains is substantial. Counsel must finish reviewing, indexing, and cross-referencing the discovery; transcribe and review the recorded calls in full rather than in the government's excerpts; obtain records the defense does not yet have, including third-party bank records; locate and interview witnesses in California, Nevada, and elsewhere; investigate the new allegations in Counts 47 through 50; consult and retain experts on the technical evidence; prepare for the November 2 suppression hearing and the reset severance motions; respond to the pending motions in limine and the *Daubert* challenges; and prepare for a multi-week trial. Brown Decl. ¶¶ 24–26. Counsel cannot do this work responsibly by February 16, 2027.

## III.

## ARGUMENT

### A. Good Cause Exists to Proceed Ex Parte.

Ex parte relief is proper where the moving party will be irreparably prejudiced if the motion is heard on the regular schedule, and where the moving party did not create the crisis. *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). Both conditions are met.

The first hearing on this Court's calendar is October 28, 2026. The suppression hearing before Judge Vera is November 2. A noticed motion could not be heard before those dates pass. If they go forward, new counsel will argue motions they did not write, on a schedule they did not set, on a record they have not finished reading, and the schedule will harden around a trial date counsel cannot meet.

The defense did not cause this. Counsel was appointed on September 25. The motion schedule was set months earlier, on prior counsel's submission. The staff losses came in October. Counsel conferred with the government on October 16 and October 19, and filed this application within four weeks of appointment. Brown Decl. ¶¶ 2–3, 16–17, 21–22.

### B. The Ends of Justice Outweigh the Interest in a Speedy Trial.

The Speedy Trial Act excludes delay from a continuance granted on a finding "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). The Court must state its reasons on the record, and consent alone does not supply them. *Zedner v. United States*, 547 U.S. 489, 500–01, 506–07 (2006). Three of the statutory factors apply here.

**Miscarriage of justice.** Proceeding on the present schedule "would be likely to . . . result in a miscarriage of justice." § 3161(h)(7)(B)(i). Mr. Henley faces fifty counts

and possible life imprisonment. A trial by counsel who have not finished the discovery is not a fair trial.

**Complexity.** The case is "so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation" within the present limits. § 3161(h)(7)(B)(ii). The government said so itself in its Notice of Complex Case. Dkt. 384.

**Continuity and effective preparation.** The Court must consider whether denial "would deny counsel for the defendant . . . the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." § 3161(h)(7)(B)(iv). New counsel stepped into a case two years along. The defense team then lost its paralegal support. Both counsel carry other cases with dates already set. Counsel has worked diligently, Brown Decl. ¶¶ 10–15, but diligence does not shrink 1.1 million pages and 29,612 recordings.

Mr. Henley asks the Court to exclude the time from February 16, 2027, through October 19, 2027, inclusive.

**C. Counsel's Existing Caseloads Support the Continuance.**

Counsel's other obligations bear on the time reasonably needed for effective preparation. § 3161(h)(7)(B)(iv). The point is not that counsel are busy. Every appointed lawyer is busy. The point is that this appointment came mid-stream, on top of trials and hearings that other courts had already set, in a case that would fill any one lawyer's calendar alone. Brown Decl. ¶¶ 18–20. The Court does not have to choose between Mr. Henley and counsel's other clients. An eight-month continuance lets counsel meet both obligations.

**D. A New Motion Schedule Should Be Set With Present Counsel.**

The current hearing dates were set on a joint submission that Mr. Henley's prior counsel joined. Dkts. 328, 333, 342, 360. Present counsel had no say in which motions

would be heard when, how much time the defense would have between hearings, or how those dates would fit the defense's own work. The severance motions have no date at all. Dkt. 441. A schedule built by other lawyers for a February trial will not fit an October trial or the lawyers now trying the case. Mr. Henley asks the Court to vacate the remaining hearings and hold an early status conference, where present counsel and the government can propose a new schedule keyed to the new trial date. That conference should come soon, not months from now, so that the motions keep moving while the defense prepares.

**E. The Flynt Factors Favor the Requested Relief.**

In the Ninth Circuit, a court ruling on a continuance weighs the movant's diligence, the usefulness of the continuance, the inconvenience to the court and the government, and the prejudice to the defendant if the request is denied. *United States v. Flynt*, 756 F.2d 1352, 1358–59 (9th Cir. 1985); *United States v. Rivera-Guerrero*, 426 F.3d 1130, 1138–39 (9th Cir. 2005). Each factor favors Mr. Henley.

**Diligence.** Counsel met the client within three days of appointment, put investigators in the field, started transcription, and began rebuilding the discovery platform. Counsel sought the government's position within three weeks. Brown Decl. ¶¶ 10–15, 21–22.

**Usefulness.** The time will be used for specific work: discovery review, full-call transcription, third-party records, witness interviews, expert consultation, and motion and trial preparation. Brown Decl. ¶¶ 24–26. Eight months is what that work requires, measured against the hours counsel actually have. Brown Decl. ¶ 25. The early status conference will let the Court set interim deadlines that keep the work on track.

**Inconvenience.** Trial is four months away. No jury has been summoned. The government's witnesses can be rescheduled. Setting a firm date now, eight months out, gives the Court, the government, and its witnesses a date they can plan around and a schedule that holds.

**Prejudice.** If the schedule stands, counsel will argue suppression and in limine motions without the full record, try a case without having heard the calls in context, and face witnesses who have not been interviewed. That is concrete prejudice. Counsel can describe privileged details to the Court in camera if the Court wishes.

**F. The Sixth Amendment Requires Time to Prepare.**

"[A] myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). There is no mechanical test. The answer lies in the circumstances, "particularly in the reasons presented to the trial judge at the time the request is denied." *Id.* Mr. Henley does not claim that 144 days is too short in every case. He claims it is too short in this one, for the reasons in the record.

**G. The Prior Continuances and Mr. Henley's Custody Do Not Weigh Against Relief.**

Mr. Henley has been in custody since March 2025, and he objected to the last continuance. The defense takes both facts seriously. But the record has changed since April. Mr. Henley has new counsel. He faces a new indictment with new counts. The defense has lost its paralegal support. Counsel has discussed the need for this continuance with Mr. Henley, and he understands defense counsel's request. Brown Decl. ¶ 23. The request is also measured. It asks for eight months, tied to specific tasks, and a firm date. It does not ask for an open-ended delay.

/
/
/
/
/
/
/

/

/

/

/

## IV.

## CONCLUSION

Mr. Henley respectfully asks the Court to continue the jury trial to October 19, 2027, and the final pretrial conference to October 6, 2027; to vacate all other scheduled hearings in this matter; to set an early status conference within thirty days, or as soon as convenient for the Court, to set a new pretrial motions schedule; and to make the findings required by 18 U.S.C. § 3161(h)(7) and exclude the time from February 16, 2027, through October 19, 2027, inclusive.

Respectfully submitted,

DATED: October 23, 2026

By: /s/ *Charles C. Brown*
CHARLES C. BROWN
ANDREA LUEM
Counsel for Eugene Henley, Jr.

# DECLARATION OF CHARLES C. BROWN

I, Charles C. Brown, declare:

1. I am an attorney licensed to practice in California and admitted before this Court. I am appointed counsel of record for defendant Eugene Henley, Jr., under the Criminal Justice Act, together with Andrea Luem. I have personal knowledge of the facts below and, if called, could testify to them.

**Appointment and Discovery**

2. The Court appointed Ms. Luem and me on September 25, 2026. Dkt. 447. Trial is set for February 16, 2027, which is 144 days after our appointment.

3. The present pretrial motions schedule was set on a joint submission that Mr. Henley's prior counsel joined on April 29, 2026. Dkts. 333, 342, 360. Neither Ms. Luem nor I took part in setting that schedule, or any other date in this case.

4. We received the discovery from prior counsel on the week following our appointment.

5. Based on our own count, the government has made 33 discovery productions accompanied by an index and a cover letter. Counting every occasion on which the defense has received material from the government, there have been 42 productions. Those productions total 1,121,068 pages, 29,612 audio and video files, and 218.94 gigabytes of data. In addition, the defense holds an external drive containing eight forensic extractions, including extractions of Mr. Henley's devices. The extractions are not included in the totals above.  These figures exceed those stated at the June 10, 2026 hearing because they now include additional discovery related to the Second Superseding Indictment.

6. The discovery includes Title III intercepts from at least five authorization periods; consensual recordings; in-person recordings; linesheets; surveillance and doorbell-camera video; cell-site and phone-location records; phone extractions; social-media and podcast material; bank records, SBA loan files, tax returns, and donor

records; mortgage-application records; and the North Las Vegas Police Department homicide file.

7. The government's exhibit list identifies roughly 200 recorded calls. Discovery contains thousands more. Many government exhibits are excerpts of longer calls. A defense motion for complete versions of the recordings is pending, and the Court has indicated that complete versions will be addressed closer to trial.

8. Mr. Henley's ability to review discovery in custody has been limited. A hard drive of discovery sent to him at MDC did not arrive and had to be replaced. Moreover, much of the discovery is subject to a protective order which requires counsel or  team member to be present with Mr. Henley to review.

**Preparation Since Appointment**

9. Our work falls into the categories below. I describe it in general terms to protect attorney-client privilege and work product. I can provide more detail to the Court in camera.

10. **Client meetings.** I first met with Mr. Henley on September 28, 2026. Since then, members of the defense team have visited him at MDC Los Angeles each week on a set rotation.

11. **Investigation.** We have retained and deployed investigators who are locating and interviewing witnesses and gathering public records in Los Angeles, Orange, Riverside, and San Bernardino Counties and outside California.

12. **Recorded calls.** We have identified roughly 185 calls central to the suppression motions. About a quarter of those have been transcribed, with the work shared across defense teams. Many other recordings are voicemails or fragments that must still be screened out.

13. **Discovery platform.** We are moving the discovery from the system used by prior counsel into a searchable review platform, with bulk storage kept separately.

Recordings must be transcribed before their contents can be searched. Team members require training on the new platform.

14. **Financial records.** We have begun reviewing the financial records underlying the fraud and embezzlement counts. Some records needed for that review, including third-party bank records and complete donor records, are not in the discovery we have received.

15. **Discovery requests.** We are preparing a written request to the government for specific missing materials before filing any motion to compel.

**Staffing**

16. When we were appointed, the defense team included two paralegals. Unfortunately, those two individuals will be leaving the defense team for other positions. Those two paralegals handled discovery intake and indexing, coordination with prior counsel and co-defense teams, and preparation of materials for client review.

17. We have identified a replacement with experience coordinating discovery in capital cases. Defense counsel is informed and believes it will take an additional week to get the new paralegal authorized and onboard the case.

**Counsel's Existing Caseloads**

18. Apart from this case, I am counsel of record in two other pending matters with trials, hearings, or filing deadlines set between now and March 2027. They include:

- *United States v. Horn, No. CR 25-1025-SSS (Derek Horn)* – A two-week interstate theft case before Judge Sykes in Riverside. Trial is scheduled for January 25, 2027, with a pretrial conference on January 8, 2027.
- *United States v. Armstead, et al., No. CR 25-651-JFW (10) (Tejohn Gray)* – A multi-defendant RICO conspiracy and Hobbs Act robbery prosecution. The client is assigned to Trial Group 1, set for trial on March 18, 2027, with a status

conference on February 15, 2027. A trial length estimate has not yet been set; the case should be treated as a multi-week trial.

Brown Decl. ¶ 18.

Ms. Luem has other pending matters as well and intends to resolve as many of those pending prior to trial in this case. Brown Decl. ¶ 19. These include:

- *United States v. Tsethlikai* – Authorized federal death penalty case with motions hearings scheduled for November 18, December 16, 2026, and January 13, February 3, 2027 (Learned Counsel, New Mexico).
- *United States V. Mavo-Finol.* Death penalty eligible RICO/VICAR case with hearing set for December 16, 2026 (Learned Counsel, New Mexico).
- Ms. Luem also has a planned trip abroad from March 14 to March 18, 2027.

Those obligations were in place before the appointment here. Counsel cannot set them aside without prejudice to other clients, and the courts in those cases have set their own calendars. Counsel has arranged the work in this case around them, but they reduce the hours available to this case before February.

These dates were set before my appointment in this case.

19. We have arranged our work in this case around those obligations. Even so, those matters reduce the hours either of us can give this case before February 16, 2027. I do not believe either of us can withdraw from or continue those matters without prejudice to those clients.

**Notice to the Government and Positions of the Parties**

20. On October 16, 2026, Ms. Luem and I conferred by telephone with AUSA Kevin Butler about a continuance. The government asked for the weekend to state its position.

21. On October 19, 2026, the government stated by email that it opposes any continuance, regardless of its length.

22. Ms. Luem and I have discussed the need for a continuance with Mr. Henley. He understands defense counsel's request.

**Work Remaining**

23. Before trial, the defense must complete at least the following: review, index, and cross-reference the discovery; reconcile the redacted and unredacted versions ordered produced at the June 10 hearing; transcribe and review the recorded calls in full; obtain and review third-party records by subpoena; locate and interview witnesses in California, Nevada, and other states; investigate Counts 47 through 50; consult and retain experts on the technical and financial evidence; prepare for the November 2 suppression hearing and the reset severance motions; respond to the pending motions in limine and Daubert challenges; and prepare for trial.

24. Based on the volume of the discovery, the loss of our paralegal support, our existing caseloads, and the work described above, I believe the defense can be ready for trial on October 19, 2027, eight months after the present trial date. I will present a detailed work plan at the early status conference.

25. If the present schedule stands, I do not believe we can provide Mr. Henley with effective assistance at the hearings now set or at trial on February 16, 2027.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on October 23, 2026, at Pasadena, California.

/s/ *Charles C. Brown*
CHARLES C. BROWN